IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENNETH MASSEY                           :        CIVIL ACTION
                                         :
        v.                               :
                                         :        No. 09-3170
FAIR ACRES GERIATRIC CENTER and          :
DELAWARE COUNTY                          :

## MEMORANDUM

Ludwig, J.                                                      March 23, 2012

This is a survivor and wrongful death benefits action.  Jurisdiction is federal question,

28 U.S.C. § 1331.  The complaint alleges that on June 24, 2007, defendants, a skilled nursing

facility and the County that owns and operates it,[1] permitted plaintiff's decedent to consume

solid food, which she was physically unable to ingest.  As a result, she choked, was

hospitalized, and, on July 17, 2009, died.  The gravamen of the claim is that defendants'

conduct violated her rights under the Federal Nursing Home Reform Amendments, 42 U.S.C.

§ 1396r *et seq*. (FNHRA).  These rights are enforceable under 42 U.S.C. § 1983.  Grammar

v. John J. Kane Regional Centers, 570 F.3d 520, 532 (3d Cir. 2009).

On July 22, 2010, defendants' motion to dismiss the complaint was denied and the

parties engaged in extensive discovery.  Defendants now move for summary judgment.[2]  For

---

[1] The named defendants are Fair Acres Geriatric Center and Delaware County.  Fair Acres is not an independent corporate entity and exists only as part of Delaware County.  Counties may sue and be sued in their own name; however, Fair Acres may not be sued as if it were a legal entity separate from the county.  16 P.S. § 202; City of Philadelphia v. Glin, 613 A.2d 613, 616 (Pa. Cmwlth. 1992).

[2] Under Fed. R. Civ. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

the following reasons, summary judgment will be granted in defendants' favor and against plaintiff on Count I and on the § 1983 action contained in Count II of the complaint.  It will be denied as to the state law survival claim.

The record[3] reflects the following: On January 16, 2003, decedent Bernice Massey[4] was admitted to Fair Acres for long-term care.  Her medical history included a variety of conditions including gastro-esophageal reflux disorder.  Deposition of Ruby Dickinson, p. 97, Exhibit 3 to defendant's motion.  She was wheelchair-bound, but able to propel herself within the facility.  Deposition of Patrice Todd, p. 29, Exhibit 4 to defendants' motion. While a resident at Fair Acres, she required assistance with her activities of daily living, including monitoring of her diet.  On March 9, 2006, a physician directed that she receive "no

---

judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion."  Fed. R. Civ. P. 56(a).  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."  Grosso v. Univ. Pittsburgh Med. Ctr., 2012 WL 787481, at *9-10 (W.D. Pa., filed Mar. 9, 2012), citing Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).  "In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party."  Id. (citations omitted).

[3] The record consists of the pleadings, deposition testimony, and documents produced in the course of discovery.

[4] At the time of her admission, Bernice Massey was a ward of the state and a court-appointed guardian was responsible for her care.  Court order granting guardianship, Exhibit 6 to defendant's motion.  Plaintiff Kenneth Massey, Bernice Massey's son, grew up in foster care and had only sporadic contact with his mother.  Deposition of Kenneth Massey, p. 17, 21, Exhibit 7 to defendant's motion.  She did not support him financially and had ceased contacting him by the time she was admitted to Fair Acres.  Id., p. 22-23.  He was not aware that she had been admitted to Fair Acres and did not visit her there.  Id., p. 35.

sandwiches, no bread, lemon ice with lunch and dinner" with close supervision during oral intake.  Dickinson N.T. p. 114-15, Exhibit 3 to defendants' motion.  Additionally, her diet was changed to "mechanical soft, with pureed vegetables."  Id., p. 101.  A written care plan was prepared in the event of swallowing difficulties, which included staff assistance while eating and aspiration precautions.   Swallowing Precaution Care Plan, Exhibit 8 to defendants' motion.

On April 4, 2006, her speech therapist recommended continued mechanical soft diet with pureed fruits and vegetables; 1:1 assist at meals; alternate liquids/solids; aspiration precautions; no bread, sandwiches or ground chicken.  A physician agreed with these recommendations and wrote an appropriate order.  On May 22, 2007, her diet was downgraded from mechanical soft to pureed.  Swallowing Precautions Care Plan, Exhibit 8 to defendants' motion.

On June 24, 2007, Patrice Todd, LPN, fed her a pureed lunch, and gave her one-on-one assistance.  Todd N.T., p. 37, Exhibit 4 to defendants' motion.  Also, she was fed at a separate table so she would not have access to other residents' meals.  Id., p. 39-40.  After lunch, the room was cleaned and all food and trays removed.  At 2:30 that afternoon, she asked Sharona Brown, CNA for a dollar.  Statement of Sharona Brown, attached to Incident Report, Exhibit 10 to defendants' motion.  She appeared to be fine at that time.  Id.

At 4:20 p.m., Gretchen Shelton, a nurse, was passing out medication when she was told that Bernice Massey "did not look right."  Incident Report, Exhibit 10 to defendants'

motion.  She found her choking, called 911, and began a Heimlich Maneuver.  Id.  Massey lost consciousness at that time.  Continued use of the Heimlich Maneuver and finger sweeps revealed that she had been choking on white bread and pink-colored lunchmeat.  Id.

Emergency medical personnel resuscitated Massey and transported her to the hospital, but she never regained consciousness.  Id.  She was placed and remained on life support until July 17, 2007, when after her family discontinued the support she died.  Riddle Memorial Hospital Discharge Summary, Exhibit 11 to defendants' motion.  The Death Certificate lists "complications of asphyxia due to obstruction of airway by food bolus, with anoxic encephalopathy" as the cause of death.  Death Certificate, Exhibit 12 to defendants' motion.

Count I of the complaint sets forth a claim under Pennsylvania's Wrongful Death Act, 42 Pa.C.S.A. § 8301 and a corresponding § 1983 action alleging a deprivation of federal rights enumerated in FNHRA, 42 U.S.C. § 1396r.  Count II alleges a state law survival action under Pennsylvania's Survival Act, 42 Pa.C.S.A. § 8302 and a corresponding § 1983 action, again for deprivation of rights accorded under  FNHRA.[5]

### Wrongful Death Action and § 1983

Defendants contend, and plaintiff concedes, that the wrongful death act claim under

---

[5] The parties agree that the complaint does not allege a common law negligence claim. Defendant's memorandum at 9-10; plaintiff's memorandum at 14 n.2.  A common law negligence claim would be barred by the Pennsylvania Political Subdivision Tort Claims Act.  42 Pa.C.S.A. § 8541 and § 8545 grant governmental immunity for local municipal agencies and their employees.  The Act applies to county-owned skilled nursing facilities.  Morris v. Montgomery County Geriatric and Rehab. Ctr., 459 A.2d 919 (Pa. Cmwlth. 1983).  None of the exceptions to governmental immunity are present here; this is a professional negligence action.

state law is barred by the Pennsylvania Political Subdivision Tort Claims Act.

As to the § 1983 actions, plaintiff lacks standing to file such a claim to enforce rights under FNRHA flowing from his mother's wrongful death. In wrongful death actions as embodied in Count I, the rights of the survivors, not the decedent, are at issue.[6] Here, the survivors have no rights under FNHRA arising from Massey's death because they were not nursing home residents. Grammar, 570 F.3d at 530-31 (rights are conferred on nursing home residents). Plaintiff does not oppose this aspect of defendant's motion.[7]

Survival Action and § 1983

According to defendants' motion, both actions are barred by the applicable statute of limitations.

A. Survival Action

A survival action is a continuation of a personal injury action held by the decedent at the time of death and may be brought by the personal representative of the decedent's estate. Miller v. Philadelphia Geriatric Ctr., 463 F.3d 266, 272 (3d Cir. 2006), citing Moyer v. Rubright, 438 Pa. Super. 154 (1994). Here, under 42 Pa.C.S. § 5524(2), an action to recover

---

[6] See, e.g., Pennsylvania's wrongful death statute: "the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased." 42 Pa.C.S.A. § 8301(b). In contrast, the § 1983 claim in Count II asserts Bernice Massey's rights under FINHRA insofar as they are premised on a survival action.

[7] Local Rules of Civil Procedure 7.1(c) ("In the absence of a timely response [to a motion] the motion may be granted as uncontested."); Jackson v. J. Lewis Crozer Library, 2007 WL 2407102, at *6 (E.D. Pa., filed Aug. 22, 2007) ("Since plaintiff did not address defendants' motion with respect to punitive damages, I will treat that portion of the motion as uncontested.")

5

damages for injuries to the person or for the death of an individual caused by the wrongful act of another must be commenced within two years. Baumgart v. Keene Building Products Corp., 633 A.2d 1189, 1192 (Pa. Super. 1993). The limitations period begins to run on the date of injury, unless an exception tolls the statute. Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc., 503 Pa. 80, 84 (1983).

For purposes of a survival action, Pennsylvania courts have distinguished between the date of injury and the date of death, in that survival action damages are, essentially, for pain and suffering between the time of injury and death. Frey v. Pennsylvania Elec. Co., 607 A.2d 796, 798 (Pa. Super. 1992) (a "survival action has its genesis in the decedent's injury, not his death."). If a period of two years has passed following the date of injury, an action for such injury is barred and cannot be asserted by the personal representative of the injured person following his death. Id., citing Anthony v. Koppers Co., Inc., 436 A.2d 181, 184-85 (Pa. 1981).

Here, the record establishes that the decedent choked on June 24, 2007. According to defendants, this is the date on which her injury occurred, and the date on which the statute of limitations for a survival action began to run. Therefore, in order to be timely, the survival action was barred unless filed by June 24, 2009. It was not filed until July 16, 2009, several weeks after the statute of limitations expired.

Plaintiff responds that the survival action was timely filed under the Medical Care and Reduction of Error Act, 40 Pa.C.S. § 1303 *et seq.* Under that Act, claims must be filed within

6

two years after the date of death in a professional liability case.[8]  The Act is specifically applicable to professional liability actions involving nursing homes. 40 Pa.C.S. § 1301.503. It does not speak to accrual of claims.

However, in Matharu v. Muir, 29 A.3d 375 (Pa. Super. 2011), the Pennsylvania Superior Court held as a matter of statutory construction that "the specific statute of repose set forth at section 513(d) of the MCARE Act controls over the general statutory language of 42 Pa.C.S.A. § 5524."  Therefore, in that case, "[p]ursuant to section 513(d) of the MCARE Act, Plaintiffs were required to commence their causes of action 'within two years after the death'"of their child.  Id. at 382.

The parents of the deceased infant in Matharu brought wrongful death and survival actions against physicians involved with the mother's care in a prior pregnancy.  The parties agreed that the negligence in question was the failure to administer RhoGAM during the mother's pregnancy in 1998.  Id. at 379-80, citing Trial Court Opinion at 1-5.  As a result, the mother became Rh sensitized.  As a further result, in November 2005, mother's sixth child was born with birth defects and died two days later.  The parents filed suit in April 2007.  Id. at 380.

On a motion for summary judgment, the Matharu defendants contended that plaintiffs' claims were barred, having been filed nearly seven years after defendants'

---

[8] "DEATH OR SURVIVAL ACTIONS. - If the claim is brought under 42 Pa.C.S.A. § 8301 (relating to death action) or 8302 (relating to survival action). The action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death."  40 P.S. § 1303.513.

negligence, which plaintiffs acknowledged being aware of at the time.  The evidence was "that [the] Child suffered an injury either at his birth on November 10, 2005, or upon his death (two days later).  Plaintiffs commenced the survival action on April 25, 2007, well within the two-years of Child's injury."  Id. at 384.  Their wrongful death and survival claims depended on the loss sustained as a result of the injury and death of their child, which did not occur prior to his birth.  The claims having been filed within two-years of the birth were, as a result, timely both under the MCARE Act and Pennsylvania's general statute of limitations provisions.  Id. At 383-84.  It was unnecessary to determine whether the Pennsylvania legislature intended to extend the accrual of survival claims from the date of injury to the date of death in actions governed by the Act.  Therefore, the broad language of Matharu court's holding would seem to require denial of defendants' motion for summary judgment with respect to plaintiff's state law survival action in that the action was filed within two years of Massey's death.[9]

### B. § 1983 Claim

Count II of the complaint also includes a § 1983 claim.  Section 1983 does not contain a statute of limitations.  However, 42 U.S.C. § 1988 states that where federal law does not set forth a statute of limitations, state law shall apply.  The Supreme Court has held that in the interests of national uniformity and predictability, all § 1983 claims shall be treated as tort claims for the recovery of personal injuries.  Wilson v. Garcia, 47 U.S. 261 (1985).

---

[9] Defendants did not move for summary judgment on the state law survival claim on grounds other than statute of limitations.

Here, according to defendants, the § 1983 action is time-barred because it was filed more than two years after the choking incident, which occurred on June 24, 2007, the date on which the limitations period began to run on the § 1983 claim. Plaintiff again responds that under MCARE, the § 1983 claim, too, was timely filed. However, MCARE, a state statute, does not control the accrual of a claim under § 1983. Claims under § 1983 are treated as personal injury claims and are subject, in this case, to Pennsylvania's two-year statute of limitations. Federal law determines when the claim accrues - when plaintiff knew or had reason to know of the injury forming the basis for the action. Sameric Corp. v. City of Philadelphia, 142 F.2d 582, 599 (3d Cir. 1998); Oschiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994). Here, the injury giving rise to the survival action was the choking, which occurred on June 24, 2007. The complaint was not filed until more than two years after that date and the § 1983 claim is, therefore, time-barred.

Summary judgment must be entered in favor of defendant and against plaintiff on Count I of the complaint and on the § 1983 claim contained in Count II. It must be denied as to the survival action under state law contained in Count II

BY THE COURT:

/s/Edmund V. Ludwig
Edmund V. Ludwig, J.

9